**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CURLEY'S EXPRESS, INC. d/b/a**
**JMC FOOD EQUIPMENT**,

Plaintiff/Counter-Defendant,

v. Case No. 8:25-CV-412-WFJ-AAS

**ADEERA IKRAFT, INC.**,
**CHRISTOPHER BAUMANN**,
and **SUSHANT GAUR**,

Defendants/Counter-Claimant.
_________________________________/

# ORDER

Before the Court are Defendant and Counter-Claimant Adeera iKraft, Inc.'s ("Adeera iKraft") Unopposed[1] Motion for Summary Judgement, Dkt. 55, and Defendants Christopher Baumann ("Mr. Baumann") and Sushant Gaur's ("Mr. Gaur") Unopposed Motion for Summary Judgment. Dkt. 57. Plaintiff and Counter-Defendant Curley's Express, Inc. d/b/a JMC Food Equipment ("JMC") has failed to respond in opposition to either motion, and the time to do so has passed. *See* Dkt. 61. Upon careful consideration, the Court grants Messrs. Baumann and Gaur's motion and grants-in-part and denies-in-part Adeera iKraft's motion.

---

[1] Plaintiff has failed to timely respond, and thus Defendants' motions are deemed unopposed. *See* Local Rule 3.01(b) ("If a party fails to timely respond, the motion is subject to treatment as unopposed.").

## BACKGROUND[2]

This dispute arises from an agreement between the parties regarding the manufacture and delivery of paper bags. *See generally* Dkts. 1, 45. JMC "is a Massachusetts corporation who operates a warehouse in Lakeland, Florida[.]" Dkt. 45 at 22 ¶ 18; Dkt. 46 ¶ 18. Non-party Brian Eck ("Mr. Eck") serves as the CEO for JMC. Dkt. 56-1 ¶ 10. Adeera iKraft is a Florida corporation affiliated with non-party Adeera Packaging Private Limited ("Adeera Packaging"), a manufacturer of paper bags located in India. *Id.* ¶ 5. Messrs. Baumann and Gaur are the co-founders and serve as officers of Adeera iKraft. *Id.* ¶¶ 1, 16. Mr. Baumann operates out of Florida, *id.* ¶ 1, while Mr. Gaur operates out of India. *Id.* ¶ 16.

On May 7, 2024, JMC contacted Adeera iKraft to discuss a potential manufacturer-distributor relationship. *Id.* ¶¶ 4, 7. JMC sought to enter into a business relationship with Adeera iKraft, whereby Adeera Packaging would manufacture the paper bags in India, then ship the bags to JMC's warehouses in Florida and elsewhere, where JMC would then distribute the bags to various end buyers. *Id.* ¶ 5.

[2] The Court notes that for this unopposed motion, it "need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *United States v. 5800 S.W. 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). The Court thus confines its review of evidentiary materials to the evidence cited in support of the present unopposed motions. *See id.* at 1101–02 ("At the least, the district court must review all of the evidentiary materials submitted in support of the [unopposed] motion for summary judgment."); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Furthermore, the Defendants' statements of undisputed fact, Dkts. 56, 58, are deemed admitted by Plaintiff JMC, as the Court's published preferences provide that "[i]n deciding a motion for summary judgment, the court will deem admitted any fact in the statement of undisputed material facts that the opposing party does not specifically controvert, provided record evidence supports the moving party's statement."

On May 27, 2024, Mr. Eck met with Mr. Baumann at JMC's Florida warehouse to continue their discussion about the potential business relationship. *Id.* ¶ 12. JMC "advertised its Florida warehouse as a positive for the parties' potential relationship[,]" *id.* ¶ 8; however, it was "actively considering closing its Florida warehouse" at this time. *Id.* ¶ 10.

JMC sent a proposed "Principal Agreement" to Adeera iKraft on June 17, 2024, which "purported to grant JMC the exclusive rights to distribute and re-distribute [Adeera iKraft's] bag products east of the Mississippi River and throughout the East Coast of the United States." *Id.* ¶ 13. Mr. Baumann rejected the proposed "Principal Agreement" on behalf of Adeera iKraft, but advised that it was still open to an agreement with JMC." *Id.* ¶ 14.

On July 1, 2024, Mr. Guar, traveled from India to meet Mr. Baumann and Mr. Eck at JMC's Massachusetts warehouse to discuss the potential business relationship. *Id.* ¶ 16. This meeting led to an oral agreement between Adeera iKraft and JMC, wherein Adeera iKraft—presumably through Adeera Packaging—would "manufacture and deliver paper bags to JMC pursuant to individual purchase orders that would be submitted by JMC on the condition that JMC provide specific assurances regarding its financial and operational capacities." *Id.* ¶ 17.

During this negotiation process, JMC represented multiple times that it was in a "strong financial position" and "had sufficient financing and operational capacity

to sell a high volume of [Adeera iKraft's] product at specified price points and remit payment for orders related to the same." *Id.* ¶¶ 8, 21. However, JMC was actually over-advanced on its loan with Massachusetts Business Development Corporation ("BDC Capital"), suffered significant losses the prior year, and had cut its payroll approximately in half. *Id.* ¶ 9.

The parties then produced a joint business plan (the "Mission One Plan"), wherein JMC represented that BDC Capital would provide financing on accounts receivable and the inventory of the bags once in stock. *Id.* ¶¶ 23–24; *id.* at 22. Representatives of BDC Capital later stated that the financer "never would have lent money to JMC on 'inventory' of the paper bags," which were considered commodities for which BDC Capital would not provide funding. *Id.* ¶ 25; *see* Dkt. 56-2 at 62:21–63:7, 90:17–20, 118:10–15. The Mission One Plan also reflected an agreement that Adeera Packaging would provide a $500,000 line of credit to JMC "specifically and exclusively for the pre-payment of any shipments with balances to be due on Net 30 terms." Dkt. 56-1 ¶ 26; *see id.* at 22 ("500k credit with Adeera Factory (India) – 30 days after receiving"). Unbeknownst to Adeera iKraft, JMC advised BDC Capital that it was instead receiving a $1,000,000 line of credit. *Id.* ¶ 27; *see* Dkt. 56-2 at 62:21–63:7.

In July 2024, JMC placed fourteen purchase orders for 36,446 bales, totaling over 17,000,000 paper bags, which required payment on Net 30 terms. *Id.* ¶¶ 28–29.

Adeera iKraft accepted the purchase orders and shipped the first eleven purchase orders to JMC from September 11, 2024, to October 31, 2024, issuing invoices for each. *Id.* ¶¶ 33–34. JMC failed to remit payment for any of the first eleven purchase orders. *Id.* ¶ 35.

In October 2024, Adeera iKraft provided both written and verbal demands for the outstanding $470,838.34 for the eleven fulfilled purchase orders. *Id.* ¶ 36. JMC advised Adeera iKraft that payment for the outstanding amount "would now be conditioned upon Adeera [iKraft] entering into an exclusive distribution agreement with JMC because BDC [Capital] required a contract and some proof of sales to allow JMC to borrow against inventory." *Id.* ¶ 37. Adeera iKraft refused these new terms. *Id.* ¶ 38. JMC advised that it was not trying to avoid payment, but emphasized that BDC Capital required the contract and proof of sales to allow JMC to obtain the funds for payment. *Id.* ¶ 39. However, a representative of BDC Capital later revealed that it never required these new terms, never requested a contract between JMC and Adeera iKraft, and did not recall JMC ever attempting to obtain additional financing. *Id.* ¶ 52; *see* Dkt. 56-2 at 125:15–126:19.

Adeera iKraft continued to ship the remaining three purchase orders while the parties attempted to work towards a solution. Dkt. 56-1 ¶ 40. JMC then placed an additional fifty-two purchase orders. *Id.* ¶ 41. Adeera iKraft shipped twenty of these purchase orders to JMC warehouses. *Id.* ¶ 42.

Due to lack of payment, Adeera iKraft was forced to divert twenty-three shipments that were en route to JMC.[3] *Id.* ¶ 43. Because JMC still failed to remit any payment, Adeera iKraft cancelled the remaining thirty-two purchase orders that were outstanding. *Id.* ¶ 44. Mr. Baumann later represented that Adeera iKraft would have never accepted the purchase orders from JMC had it been aware of "JMC's financial struggles or the fact that BDC Capital would not lend to JMC to support its business on receipt of the inventory[.]" *Id.* ¶ 30.

In November 2024, Adeera iKraft sent a formal demand letter to JMC requesting payment for the eleven purchase orders that Adeera iKraft fulfilled between September and October 2024. *Id.* ¶ 50. As of the date of the present motions, JMC has failed to remit payment of any kind to Adeera iKraft. *Id.* ¶ 35. There remains an outstanding balance of $470,838.34, in addition to expenses for the twenty-three diverted purchase orders, "including but not limited to expenses for payments for the manufacturing of the paper bags in excess of $2,000,000." *Id.* ¶ 51. JMC never rejected a shipment, never notified Adeera iKraft in writing of any defects, and instead sold and distributed many of the paper bags received for profit. *Id.* ¶¶ 45–48.

[3] The twenty-three diverted shipments appear to be comprised of the twenty shipments from the second set of purchase orders, in addition to the three remaining shipments from the first set of fourteen purchase orders.

On November 14, 2024, JMC brought the present action against Defendants in the District of Massachusetts. Dkt. 1. The Verified Complaint raises the following claims jointly against each of the Defendants: breach of contract (Count I); fraudulent inducement (Count II); fraud (Count III); fraud or deceit in sale of personal property under Massachusetts General Laws Chapter 231, Section 85J (Count IV); breach of the implied warranty of merchantability (Count V); promissory estoppel/detrimental reliance (Count VI); and unfair or deceptive business practices under Massachusetts General Laws Chapter 93A, Section 11 (Count VII). *Id.* ¶¶ 56–103.

This action was transferred to the Middle District of Florida on February 18, 2025. Dkts. 16–19. On March 20, 2025, Defendants filed a motion to dismiss, Dkt. 36, which was denied as the Court found the Verified Complaint to be sufficiently pled, albeit "thin." Dkt. 37. The Court stated that "if the merits are as scant as movant says they are, such matters may be addressed substantively at an appropriate time." *Id.* Defendants then filed their Answer on May 15, 2025, Dkt. 45, which included the following counterclaims brought by Adeera iKraft against JMC: breach of contract (Counterclaim I); unjust enrichment (Counterclaim II); fraudulent inducement (Counterclaim III); fraud (Counterclaim IV);[4] violation of the Florida

[4] "This is mistakenly referred to as Count VI in the Counterclaims filed on May 15, 2025, but should be Count IV." Dkt. 55 at 17 n.4.

Deceptive and Unfair Trade Practices Act ("FDUTPA") (Counterclaim V).[5] *Id.* at 19–35 ¶¶ 50–104.

Adeera iKraft and Messrs. Baumann and Gaur each filed their Motion for Summary Judgment on May 28, 2026. Dkts. 55, 57. Each of the statements of undisputed material facts contained the necessary Local Rule 3.01(g) certificate, notifying the Court that JMC failed to respond to the attempts at conferral. Dkt. 56 at 10; Dkt. 58 at 5. On June 16, 2026, the Court warned JMC that "the Court will take up the motion for summary judgment shortly," and "[a]ny objection must be timely filed[.]" Dkt. 61. However, JMC has failed to respond to either motion.

**LEGAL STANDARD**

Summary judgment is only appropriate when there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of proving the absence of a

---

[5] "This is mistakenly referred to as Count VII in the Counterclaims filed on May 15, 2025, but should be Count V." Dkt. 55 at 19 n.5.

genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001). Even if a motion for summary judgment is unopposed, the movant must nevertheless show that it is entitled to judgment on the merits, based on evidentiary materials in the record. *See Dunlap v. Transam. Occidential Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988).

## DISCUSSION

Defendants seek summary judgment as to the claims raised against them, Dkt. 55 at 6–12; Dkt. 57 at 2–4, and Counter-Claimant Adeera iKraft additionally moves for summary judgment as to its counterclaims. Dkt. 55 at 13–19.

Before analyzing the parties' arguments as to summary judgment, the Court first notes that the present action was initially brought in the District of Massachusetts, Dkt. 1, and was subsequently transferred under 28 U.S.C. § 1404(a) to the Middle District of Florida. Dkts. 16–19. The Supreme Court has held that "following a transfer under § 1404(a) initiated by a defendant, the transferee court must follow the choice-of-law rules that prevailed in the transferor court." *Ferens v. John Deere Co.*, 494 U.S. 516, 519, (1990); *see Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("[I]n cases . . . where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied

if there had been no change of venue.”). Accordingly, this Court must apply the choice of law rules of Massachusetts.

“Massachusetts applies a ‘functional approach to choice of law.’” *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 74 (1st Cir. 2006) (quoting *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 638–39 (1985)). “[T]his functional approach ‘is explicitly guided by the Restatement (Second) of Conflict of Laws (1971).’” *Id.* (quoting *Clarendon Nat’l Ins. Co. v. Arbella Mut. Ins. Co.*, 60 Mass. App. Ct. 492, 496, 803 N.E.2d 750, 753 (2004)). The Restatement provides that the rights and liabilities of parties are governed by the law of the state that has the “most significant relationship” to the occurrence and the parties. Restatement (Second) of Conflict of Laws §§ 145(1), 148(2), 188(1) (A.L.I. 1971).

Here, the cited evidence establishes that Florida—of the relevant states—has the most significant relationship to the parties and the transactions at issue. Adeera iKraft is a Florida corporation, Dkt. 1 ¶ 5, Defendant Baumann operates Adeera iKraft out of Tarpon Springs, Florida, Dkt. 56-1 ¶ 1, JMC maintained and operated a warehouse in Lakeland, Florida, Dkt. 45 at 22 ¶ 18; Dkt. 46 ¶ 18, and the parties met in Florida to negotiate their initial business relationship. Dkt. 56-1 ¶ 12. Further, the contemplated agreement centered on the shipment and distribution of paper bags to Plaintiff JMC’s Florida and New York warehouses, *id.* ¶ 5; Plaintiff JMC specifically “advertised its Florida warehouse as a positive for the parties’ potential

relationship." *Id.* ¶ 8. The only connection to Massachusetts evident from the cited evidence is that Plaintiff JMC is a Massachusetts company, Dkt. 45 at 22 ¶ 18; Dkt. 46 ¶ 18, and that the state served as the location for the parties' meeting on July 1, 2024. Dkt. 56-1 ¶ 16.[6] Accordingly, the Court finds that Florida substantive law governs the parties' claims and counterclaims.

The Court's choice-of-law determination is dispositive for two of Plaintiff JMC's claims—fraud or deceit in sale of personal property (Count IV) and unfair or deceptive business practices (Count VII). These claims seek relief under Massachusetts General Laws Chapter 231, Section 85J and Chapter 93A, Section 11, respectively. See Dkt. 1 ¶¶ 80–83, 97–103. Because the Court has determined that Florida substantive law governs, causes of action raised exclusively under Massachusetts law are not recognized. *See In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1335 (S.D. Fla. 2016) ("Because California law does not govern the claims brought against Mazda, Mazda's Motion [to Dismiss] is granted as to the counts exclusively alleging claims under California law."). Accordingly, Counts IV and VII are due to be dismissed without prejudice, and the Court proceeds to apply Florida substantive law in resolving the pending motions before it.

---

[6] The Court additionally notes that it was found by the district court in Massachusetts that Plaintiff JMC "misled defendant into delaying filing any action in the Middle District of Florida so that plaintiff could instead initiate an earlier action in [the District of Massachusetts]." Dkt. 16.

## I. Plaintiff JMC's Claims

Defendants Baumann and Gaur and Defendant Adeera iKraft seek summary judgment as to the claims raised against them on different grounds. Dkts. 55, 57. The Court analyzes each argument below.

*a. Piercing the Corporate Veil*

Defendants Baumann and Gaur argue for summary judgment as to all claims against them under the assertion that there is insufficient evidence to support piercing the corporate veil. Dkt. 57 at 3–4. "The main body of corporate law is to the effect that directors, officers and stockholders are not liable for corporate acts simply by reason of their official relation to the corporation." *Fulton v. Brancato*, 189 So. 3d 967, 969–70 (Fla. 4th DCA 2016) (quoting *Munder v. Circle One Condo., Inc.*, 596 So. 2d 144, 145 (Fla. 4th DCA 1992)). In the present case, all claims are brought against all Defendants, and Plaintiff JMC's allegations largely refer to Defendants jointly and without differentiation. *See generally* Dkt. 1. In the occasional references to Defendants Baumann and Gaur individually, the Court finds that their alleged actions are taken in their capacity as officers of Adeera iKraft. *See id.* ¶¶ 6–7, 12, 24–27, 32, 43–44, 52. Thus, Plaintiff JMC must justify piercing the corporate veil to sue Defendants Baumann and Gaur individually in this manner.

"Those who utilize the laws of [Florida] in order to do business in the corporate form have every right to rely on the rules of law which protect them against

personal liability unless it be shown that the corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing of the corporate veil." *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120–21 (Fla. 1984) (quoting *Roberts' Fish Farm v. Spencer*, 153 So.2d 718, 721 (Fla. 1963)). Specifically, the Supreme Court of Florida has held that piercing a corporate veil requires the plaintiff to show that: (1) "the corporation is in actuality the alter ego of the stockholders"; and (2) "it was organized or after organization was employed by the stockholders for fraudulent or misleading purposes." *Id.* at 1120 (quoting *Advertects, Inc. v. Sawyer Indus.*, 84 So. 2d 21, 24 (Fla. 1955)).

In practice, there must be persuasive proof "that the corporation was a 'mere device or sham to accomplish some ulterior purpose,' 'evade some statute,' 'employed by the stockholders for fraudulent or misleading purposes,' 'organized or used to mislead creditors,' or 'evade existing personal liability.' *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 303 F. Supp. 3d 1282, 1286–87 (M.D. Fla. 2018) (emphasis omitted) (quoting *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 469 (Bankr. M.D. Fla. 1994)). "The key, therefore, is deliberate improper conduct." *Id.* (citation omitted). "Those who seek to pierce the corporate veil . . . carry a very heavy burden." *In re Hillsborough Holdings Corp.*, 166 B.R. at 468.

Here, this requisite burden has not been met. The Court finds no cited evidence that Adeera iKraft's corporate form was either a mere alter ego or was

organized or employed to deliberately accomplish improper conduct. Because there is no established basis for piercing the corporate veil, Defendants Baumann and Gaur cannot be sued individually in this manner. Accordingly, Defendants Baumann and Gaur are entitled to summary judgment in their favor on all claims asserted against them in their individual capacities.

*b. Counts I, II, III, & VI – Breach of Contract, Fraudulent Inducement, Fraud, & Promissory Estoppel*

Defendant Adeera iKraft seeks summary judgment as to the breach of contract, fraudulent inducement, fraud, and promissory estoppel claims brought by Plaintiff JMC. Dkt. 55 at 6–8. Under Florida law, a plaintiff must first establish "the existence of a contract" for a breach of contract claim, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citation omitted), and similarly must establish "a promise made by the promisor" for a promissory estoppel claim. *White Holding Co., Ltd. Liab. Co. v. Martin Marietta Materials, Inc.*, 423 F. App'x 943, 947 (11th Cir. 2011) (quoting *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989)). Regarding claims of fraudulent inducement and fraud in Florida, a plaintiff must initially establish "a false statement concerning a material fact[.]" *Moriber v. Dreiling*, 194 So. 3d 369, 373 (Fla. 3d DCA 2016) ("The elements of fraudulent misrepresentation and fraudulent inducement are: (1) a false statement concerning a material fact . . . ." (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010))); *Omnipol, A.S. v. Multinational Def. Servs., Ltd. Liab. Co.*, 32 F.4th 1298,

1307 (11th Cir. 2022)) ("Under Florida law, the elements of fraud are '(1) a false statement concerning a material fact . . . .'" (quoting *Butler*, 44 So. 3d at 105)).

In each of these claims, Plaintiff JMC argues that Defendant Adeera iKraft promised to formalize their agreement in a written contract. Dkt. 1 ¶ 59 ("The Defendants breached the contract by unreasonably refusing to finalize and execute a written agreement between the Plaintiff and the Defendants."); *id.* ¶¶ 64, 72 ("The Defendants made false statements of material fact to the Plaintiff by misrepresenting the Defendants' intent to agree to a written contract."); *id.* ¶ 93 ("The Plaintiff reasonably relied on the Defendants promises and assurances of a forthcoming written agreement[.]"). However, the cited evidence does not support such an arrangement.

The cited evidence establishes that Defendant Adeera iKraft orally agreed only to "manufacture and deliver paper bags to JMC pursuant to individual purchase orders that would be submitted by JMC on the condition that JMC provide specific assurances regarding its financial and operational capacities." Dkt. 56-1 ¶ 17. That oral agreement did not entail a future written contract; instead, the cited evidence reflects that Defendant Adeera iKraft explicitly declined to enter into a written contract on multiple occasions. *See id.* ¶¶ 14, 17; *see also id.* ¶ 18 ("At no point did Adeera commit to enter into an agreement with JMC."). Because there is no cited support for the existence of such a contract or promise, an essential element of

Plaintiff JMC's breach of contract, fraudulent inducement, fraud, and promissory estoppel claims cannot be established. Accordingly, Defendant Adeera iKraft is entitled to summary judgment as a matter of law on Counts I, II, III, and VI.

*c. Count V – Breach of the Implied Warranty of Merchantability*

Defendant Adeera iKraft seeks summary judgment as to the claim of breach of implied warranty of merchantability brought by Plaintiff JMC. Dkt. 55 at 11–12. Under Florida law, to establish a claim for breach of an implied warranty of merchantability, a plaintiff must establish that it "provided notice of the breach[.]" *See Dawson v. Generac Power Sys.*, 820 F. Supp. 3d 1306, 1329 (M.D. Fla. 2025) (citations omitted). Specifically, the relevant Florida statute requires that a buyer bringing an implied warranty of merchantability claim "must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a); *see Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977).

The cited evidence establishes that "[a]t no time did JMC reject any shipment received[,]" and that "[a]t no time did JMC notify Adeera in writing of any alleged defects related to the products." Dkt. 56-1 ¶¶ 45, 46. Because there is no cited evidence of Plaintiff JMC notifying Defendant Adeera iKraft of the alleged defects that caused the breach, the Court concludes that Plaintiff JMC cannot recover under

this claim as a matter of law. Accordingly, Defendant Adeera iKraft is entitled to summary judgment as a matter of law on Count V.

## II. Adeera iKraft's Counterclaims

Beyond seeking summary judgment as to the claims raised against it, Counter-Claimant Adeera iKraft additionally moves for summary judgment as to its counterclaims against Counter-Defendant JMC. Dkt. 55 at 13–19. The Court analyzes each counterclaim below.

### *a. Counterclaim I – Breach of Contract*

"The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co.,* LLC, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). "To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega*, 564 F.3d at 1272 (citing *St. Joe Corp v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).

Here, the parties entered into an oral agreement under which Adeera iKraft "agreed to manufacture and deliver paper bags to JMC pursuant to individual purchase orders that would be submitted by JMC on the condition that JMC provide specific assurances regarding its financial and operational capacities." Dkt. 56-1 ¶ 17. Thereafter, JMC submitted fourteen purchase orders for certain products, and

Adeera iKraft fulfilled the first eleven. *See* Dkt. 56-3 at 144–59 (showing purchase orders #PO1343–56). JMC subsequently submitted fifty-two additional purchase orders, Dkt. 56-1 ¶ 41; however, some shipments associated with the additional purchase orders were diverted, *id.* ¶ 43, while the remaining purchase orders were canceled before fulfillment. *Id.* ¶ 44. Each purchase order specified payment would be due in full within 30 calendar days of the invoice date. *See id.* ¶ 26; *see also* Dkt. 56-3 at 144–59 ("Net 30 (via Electronic/wire transfer)"). The cited evidence thus establishes a valid contract, as the parties' oral agreement and ensuing purchase orders demonstrate offer and acceptance, consideration through Adeera iKraft's agreement to manufacture and deliver paper bags and JMC's agreement to remit payment, and overall sufficient specification of the essential terms.

Following Adeera iKraft's fulfillment of the first eleven purchase orders, JMC failed to remit payment. Dkt. 56-1 ¶ 35. As a result, Adeera iKraft sustained damages of at least $470,838.34, representing the unpaid invoices for those purchase orders. *Id.* ¶ 51. The Court thus concludes that the cited evidence establishes each element of Adeera iKraft's breach of contract counterclaim. Accordingly, Defendant Adeera iKraft is entitled to summary judgment as a matter of law as to Counterclaim I.

*b. Counterclaim II – Unjust Enrichment*

"It is well-settled that a plaintiff cannot pursue an unjust enrichment claim if a valid contract exists." *Grilo v. Reclaimed Woods of the World, Inc.*, No. 2:24-CV-

1113-KCD-NPM, 2026 WL 982774, at *3 (M.D. Fla. Apr. 13, 2026) (collecting cases). Because the Court has determined that a valid contract governs the parties' dispute, Adeera iKraft has not established that it is entitled to recover under an alternative theory of unjust enrichment. Accordingly, Defendant Adeera iKraft is not entitled to summary judgment as to Counterclaim II.

*c. Counterclaims III & IV – Fraudulent Inducement & Fraud*[7]

"The requirements for a claim of fraud or fraudulent inducement are: (1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." *Thompkins v. Lil' Joe Recs., Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007) (citing *Wadlington v. Cont'l Med. Servs., Inc.*, 907 So. 2d 631, 632 (Fla. 4th DCA 2005); *Biscayne Inv. Grp., Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 255 (Fla. 3d DCA 2005)).

Here, Adeera iKraft indicates that JMC made the following false statements: it was in a strong financial position and capable of paying for Adeera iKraft's products; BDC Capital would finance inventory; it intended to utilize a Florida warehouse to store the paper bags while selling the products; and BDC Capital required Adeera iKraft to execute a contract before financing could be arranged. Dkt.

[7] Under Florida law, claims for fraud and fraudulent inducement entail the same elements. *See Thompkins v. Lil' Joe Recs., Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007). As presented, these counterclaims are not distinct. This is highlighted by Adeera iKraft's motion utilizing essentially identical elements for each analysis, *see* Dkt. 55 at 15, 17, and by the reference to the same fraudulent representations. *See id.* at 15–19.

55 at 15–19. The cited evidence establishes the falsity of these representations, as well as the other two elements of JMC's knowledge of the falsity and the evident intention for the representations to induce reliance. *See* Dkt. 56-1 ¶¶ 8–9 (establishing that "JMC assured Adeera [iKraft] that it was in a strong financial position[,]" but that "JMC was already over advanced on its loan with [BDC Capital], had suffered significant losses the prior year, and had cut its payroll from approximately $36,000 per week to $18,000–$19,000 per week"); *id.* ¶¶ 24, 30 (indicating that BDC Capital "would fund on AR/Inventory of the paper bags once in stock and on purchase orders[,]" but that BDC Capital later revealed that it "would not lend to JMC to support its business on receipt of the inventory"); *id.* ¶¶ 8, 10 (showing that although "advertised its Florida warehouse[,]" it was "actively considering closing its Florida warehouse [at the time of contracting]"); *id.* ¶¶ 39, 52 (establishing that JMC represented "it needed the contract and proof of sales to obtain the funds for payment from BDC [Capital,]" but that BDC Capital "never requested a contract between JMC and Adeera").

As to the consequent injury, the Court notes that in Florida "[i]t is . . . well settled that, for [a] . . . misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach." *Peebles v. Puig*, 223 So. 3d 1065, 1068–69 (Fla. 3d DCA 2017) (citing *Rolls v. Bliss & Nyitray, Inc.*,

408 So. 2d 229, 237 (Fla. 3d DCA 1981)). Although Adeera iKraft points to the unpaid invoices and delivery costs associated with the fulfilled purchase orders, Dkt. 55 at 17, 19, those damages are not distinct from the damages recoverable under its breach of contract claim. The Court nevertheless finds that Adeera iKraft has established independent damages in the form of the manufacturing and shipping costs incurred for the products that were manufactured but never delivered, *id.*, as evinced by the cited evidence. Dkt. 56-1 ¶ 51 ("JMC still has an outstanding balance of $470,838.34 in addition to expenses for 23 other orders and shipping and storage, including but not limited to expenses for payments for the manufacturing of the paper bags in excess of $2,000,000.").

The Court thus concludes that the cited evidence establishes each element of Adeera iKraft's fraudulent inducement and fraud counterclaims. Accordingly, Defendant Adeera iKraft is entitled to summary judgment as a matter of law as to Counterclaims III and IV.

*d. Counterclaim V – Violation of FDUTPA*

The elements of a FDUTPA claim are: "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). "While in some factual scenarios a FDUTPA claim can coexist with a breach of contract claim, the Florida Supreme Court has rejected

the proposition that FDUTPA was intended to convert every breach of contract into a FDUTPA claim." *Ellenwood v. World Triathlon Corp.*, No. 8:20-cv-1182-T-60AEP, 2021 WL 62482, at *4 (M.D. Fla. Jan. 7, 2021) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 n.2 (Fla. 2003)). Florida law permits a FDUTPA claim to travel with a related breach of contract claim, *see PNR, Inc.*, 842 So. 2d at 777 n.2 ("To the extent an action giving rise to a breach of contract . . . may also constitute an unfair or deceptive act, such a claim is and has always been cognizable under the FDUTPA."), but it may only do so long as it does not "rely solely on a violation of the Agreement as a basis for assertion of [the] FDUTPA claim." *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008) (citing *Id.* at 777).

Here, although Adeera iKraft references "numerous instances of misrepresentation of [JMC's] financial position," Dkt. 55 at 19, the conduct ultimately giving rise to the claimed injury is JMC's failure to pay for the fulfilled purchase orders. Specifically, Adeera iKraft contends only that it was "damaged by JMC's refusal to remit payment." *Id.* at 20. Thus, while JMC may have made certain deceptive misrepresentations, Adeera iKraft's claimed injury arises from the same nonpayment that forms the basis of its breach of contract counterclaim. Adeera iKraft does not identify actual damages caused by the deceptive misrepresentations themselves, as opposed to the damages resulting from JMC's failure to perform its

contractual obligation to pay for the paper bags. The Court finds that Adeera iKraft has not established a basis for relief under FDUTPA independent from JMC's established breach of contract. Accordingly, Defendant Adeera iKraft is not entitled to summary judgment as to Counterclaim V.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. The Court **DISMISSES without prejudice** the claims: fraud or deceit in sale of personal property under Massachusetts General Laws Chapter 231, Section 85J (Count IV); and unfair or deceptive business practices under Massachusetts General Laws Chapter 93A, Section 11 (Count VII).
2. Defendants Christopher Baumann and Sushant Gaur's Unopposed Motion for Summary Judgment, Dkt. 57, is **GRANTED**. Summary judgment is granted in their favor and against Plaintiff Curley's Express, Inc. d/b/a JMC Food Equipment as to all claims asserted against them in their individual capacities.
3. Defendant and Counter-Claimant Adeera iKraft, Inc.'s Unopposed Motion for Summary Judgement, Dkt. 55, is **GRANTED-IN-PART** and **DENIED-IN-PART**.
    a. Summary judgment is **GRANTED** in its favor and against Plaintiff Curley's Express, Inc. d/b/a JMC Food Equipment as to the claims: breach of contract (Count I); fraudulent inducement (Count II); fraud (Count III);

breach of the implied warranty of merchantability (Count V); and promissory estoppel/detrimental reliance (Count VI).

b. Summary judgment is **GRANTED** in its favor and against Counter-Defendant Curley's Express, Inc. d/b/a JMC Food Equipment as to the counterclaims: breach of contract (Counterclaim I); fraudulent inducement (Counterclaim III); and fraud (Counterclaim IV). The Court finds liability has been established as to these counterclaims as a matter of law; however, the amount of damages remains.

c. Summary judgment is **DENIED** as to the counterclaims: unjust enrichment (Counterclaim II); and violation of the FDUTPA (Counterclaim V).

4. In light of this Order, leave is granted to Adeera iKraft to file, **within fourteen (14) days**, sworn proofs of final damages consistent with this Order. Sworn objections by Plaintiff, if any, would be due **within ten (10) days thereafter**. Failure to file sworn objections to same will be deemed a waiver as to damages.

**DONE AND ORDERED** at Tampa, Florida, on July 27, 2026.

*<u>/s/ William F. Jung</u>*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**<u>COPIES FURNISHED TO:</u>**
Counsel of Record